IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LINDA NELSON, | ) | 8:18CV88 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| VERN HJORTH, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Linda Nelson, appearing pro se, filed her Complaint (Filing No. 1) on February 23, 2018, and was granted leave to proceed in forma pauperis on March 8, 2018 (Filing No. 8). Nelson paid an initial partial filing fee on April 2, 2018.[1] The court now conducts an initial review of the Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF COMPLAINT

Nelson is a pretrial detainee at the Madison County Jail in Madison, Nebraska. She sues the Madison County Sheriff, Vern Hjorth, both in his individual and official capacities, for alleged constitutional violations under 42 U.S.C. § 1983.

Nelson purports to bring this action on behalf of herself and "all others similarly situated." For her claims, Nelson alleges:

1)      Nebraska jail standards meant to protect inmates from the wanton and malicious behavior of jail staff are ignored in their entirety by the Administration of Madison County Jail....

---

[1] On April 13, 2018, Nelson filed a Motion for Additional Time to Pay Fee (Filing No. 10). That motion will be denied without prejudice, as moot.

2)      ...No reading material from any sourse [*sic*] is allowed, regardless of the subject matter, unless it is selected and distributed by jail staff....

3)      The ban against reading material includes religious and spiritual books and publications. Only the Protestant Bible is allowed.... Religious activities are segregated based on "Protestant" Bible study and "Catholic services." ...

4)      The jail has no grievance procedure....While the "Inmate Request Form" provided by the jail does have a box to check which says "Grievance," the forms are rarely, if ever, even acknowledged—let alone answered. No grievance ever submitted by Nelson received a response....

5)      No due process exists at Madison County Jail. An inmate is confined in "administrative segregation" at the whim of staff. No documentation is ever provided regardless of the length of the segregation. No hearings are ever held regardless of the circumstances. There is no way to appeal any disciplinary actions.... Among the rule violations that will result in "administrative segregation" and a complete denial of visiting is writing a grievance or complaining about jail conditions such as hunger and cold.

6)      ...It is openly declared to be [jail policy] intended to make sure inmates are punished simply by the fact of locking people in a cage, making sure they stay hungry and cold, and use psychological pain by banning simple access to current events via the media or books, doing visits on staff whim....

7)      ...Staff is allowed to swear at and taunt inmates with impunity....

8)      Equal protection is further denied to females in that women are absolutely barred due solely to their gender from the inmate work program....

9)      Access to courts is denied by ... refusal to allow access to current law books. The newest edition of Nebraska Statutes allowed inmates is 1999 with updates to 2006.  Absolutely no access is allowed to case law.

Correspondence from legal sources is open[ed] and reviewed. Using the court to address the conditions of the jail meets with retaliation.

10)     ...Phone use is cost prohibitive, at a minimum cost of $20 and limited to purchase on 2 days of the week....

11)     Among the infractions for which inmates will be "locked down"—and thus automatically lose visiting for a minimum of one week—is laughing.

12)     ...Medical orders from doctors are "vetoed" by jail staff. Nelson was denied a brace and a sling for a wrist and shoulder injury ....

13)     No mental health issues are addressed at all.

14)     ...An inmate who cannot afford the twenty dollar minimum to place a phone call dares not ever complain about jail conditions because to do so would be to risk all contact with family.

15)     ...[Jail staff] have convinced inmates that to try to do anything will result in unacceptable retaliation... Neb RRS § 47-115 makes the sheriff liable for the negligence and misconduct of the jailers.

16)     ...[P]ersonal hygiene is limited to deodorant with no acceptable level of active ingredients and costly products that maximize personal discomfort, such as dandruff shampoo with no active ingredients. No way to clean shower curtains, which have mold on them, now way to clean smocks which smell of other inmates who wore them ..., no t-shirts.... Simple soap is withheld for up to 24 hours.

17)     ...[J]ail staff will report to immigration ...inmates who are natural born US citizens who just happen to be brown.

18)     Mail from religious volunteers to inmates in the form of post cards with Bible verses are discarded upon receipt, ....

19)     Items are often removed from inmate mail (such as drawings) without any sort of notice....

20)    Periodicals received in the mail are confiscated without notice to the inmates.

(Filing No. 1 at CM/ECF pp. 5-13).

For relief, Nelson "just want[s] the court to order the sheriff to follow the laws" (Filing No. 1 at CM/ECF p. 5). More specifically, Nelson states:

> I would like the court to certify a class action because the problems at Madison County have effected [*sic*] hundreds of people over many years. I would like the court to order the jail (Hjorth) to adhere to the Nebraska Jail Standards and stop punishing people by making them cold, hungry and bored. Order him to stop punishing people without due process. Stop taking visits away. Make the phones actually a reasonable available way to contact family. Order the sheriff to make it so people can reasonably hope to afford a phone call to secure bail[;] ... to provide copies of the Nebraska Jail Standards as mandated by Nebraska law[;] ... to create a true grievance procedure[;]...not to override medical advice[;] ... [and] to pay all the costs of these proceedings .... [F]ind that Hjorth is guilty of neglect of duty pursuant to Neb RRS § 47-116[;] order Hjorth to pay the punitive damages established by Nebraska law for such neglect of duty[;] ... [and] for any further relief that the court deems proper ....

(Filing No. 1 at CM/ECF pp. 5, 14).

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C.§§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.§ 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp.v.Twombly*, 550 U.S.544, 569-70 (2007); *see also Ashcroft v.Iqbal*, 556 U.S.662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v.JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir.2014) (quoting *Hopkins v.Saunders*, 199 F.3d 968, 973 (8th Cir.1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III. DISCUSSION OF CLAIMS

For the reasons discussed below, the court finds and concludes that: (1) no actionable claim for relief is stated against Sheriff Hjorth in his individual capacity; (2) Madison County should be substituted as Defendant for Sheriff Hjorth in his official capacity; (3) Nelson cannot bring a class action or assert claims on behalf of other inmates; (4) Nelson cannot bring suit for alleged violations of Nebraska Jail Standards; (5) Nelson has alleged a plausible First Amendment claim to challenge a County policy that bars her receipt of newspaper and magazine subscriptions and has also alleged a plausible Fourteenth Amendment claim to challenge the adequacy of

the diet she receives at the Madison County Jail; (6) Nelson's remaining allegations fail to state a claim upon which relief may be granted; (7) Nelson's Motion to Amend Complaint should be denied; and (8) Nelson's Motion for Appointment of Counsel should be denied.

### A. Individual vs. Official-Capacity Claims

"Public servants may be sued under § 1983 either in their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Individual-capacity suits seek to impose personal liability upon a governmental officer, agent, or employee for actions taken under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In contrast, suing a defendant in his or her official capacity is generally an alternative means of suing the governmental entity. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985). The real party in interest is the entity, not the official named. *Id.* at 166 ("As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Official-capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

Although Nelson is suing Sheriff Hjorth in his individual capacity as well as his official capacity, the Complaint does not indicate that he was personally involved in, or had any direct responsibility for, the alleged violations of constitutional rights. Nelson correctly notes that the sheriff "shall in all cases be liable for the negligence and misconduct of the jailer" under Neb. Rev. Stat. § 47-115, but that state statute does not apply to a federal civil rights claim brought under 42 U.S.C. § 1983.

To state a § 1983 claim, the plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). Because Nelson does not allege an actionable individual-capacity claim against Sheriff Hjorth, he will be

dismissed from the action and Madison County will be substituted as Defendant. *See, e.g., Keup v. Leftler, No. 8:17CV117, 2017 WL 3601229, at \*2 (D. Neb. Aug. 21, 2017)* (on initial review of prisoner complaint claiming that jail policies violated his constitutional rights, court on its own motion added county as defendant and dismissed official-capacity claims).

### B. County Liability

Local governing bodies, such as counties, are "persons" for the purpose of § 1983, but are liable only for injuries arising from an official policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). An official policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A v. Special School Dist.*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). To establish the existence of a governmental custom, a plaintiff must prove:

> 1)    The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2)    Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3)    That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe A*, 901 F.2d at 646.

Nelson's allegations do not establish the existence of a governmental custom, but she does complain about certain jail policies, which will be discussed in more detail in subsequent sections.

**C. Class Action**

Nelson purports to bring this action on behalf of herself and all similarly situated individuals, but a pro se plaintiff who is not an attorney cannot maintain a class action. *See Evans v. Nebraska Beef, Ltd.*, No.8:12CV161, 2013 WL 4517258, at *7 (D. Neb. Aug.21, 2013) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others." ); *Coleman v. Newton*, No.8:08CV10, 2009 WL 1936265, at *1 (D. Neb. June 29, 2009) ("Pro se litigants may not represent other parties, even in class action proceedings.") "Every court that has considered the issue has held that a prisoner proceeding pro se is inadequate to represent the interests of his fellow inmates in a class action." *Craig v.Cohn*, 80 F.Supp.2d 944, 946 (N.D. Ind. 2000). Nelson will only be allowed to sue Madison County on her own behalf, and will not be permitted to assert the rights of other prisoners in a class action.

**D. Nebraska Jail Standards**

The Jail Standards Board established within the Nebraska Commission on Law Enforcement and Criminal Justice is responsible for developing minimum standards for the construction, maintenance, and operation of criminal detention facilities by political subdivisions in Nebraska. *See* Neb. Rev. Stat. § 83-4,124 *et seq.*; *see also* Neb. Rev. Stat. § 47-101 (providing that Jail Standards Board shall prescribe rules for the regulation and government of county jails). The Board's "Standards for Jail Facilities" may be found at Title 81 of the Nebraska Administrative Code.

Nelson alleges that the operation of the Madison County Jail fails to comply with these jail standards in several respects. However, "a violation of jail standards does not equate with a violation of the Constitution." *Henderson v. Greeley*, No. 6:13-CV-06137, 2015 WL 1280312, at *2 (W.D.Ark. Mar.20, 2015). "Jail standards, although helpful and relevant in some cases, do not represent minimum constitutional standards." *Grayson v. Ross*, 454 F.3d 802, 812 (8th Cir. 2006) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir.1991) (per curiam)).

In other words, Nelson cannot bring a § 1983 action based solely upon alleged violations of the jail standards. Thus, the first numbered claim alleged in her Complaint fails as a matter of law.

### E. Alleged Constitutional Violations

Nelson contends she has been deprived of her constitutional rights under the "First, Fifth, Eighth, and Fourteenth Amendments: Specifically the rights to freedom of religion, expression, and to petition the government for a redress of grievances; right of due process; right against cruel and unusual punishments; and the right of equal protection of the laws" (Filing No. 1 at CM/ECF p. 3).

For ease of analysis, Nelson's claims will be categorized as involving (1) the complete denial of access to outside reading materials, (2) restrictions on the free exercise of religion, (3) removing materials from correspondence, opening legal mail, and discarding religious mailings, (4) the prohibitive cost of telephone calls, (5) denial of access to the courts, (6) the lack of an effective grievance procedure, (7) retaliation against inmates for filing grievances, (8) lack of due process for placement in administrative segregation, (9) certain conditions of confinement, (10) verbal abuse by jail staff, (11) denial of equal protection for female inmates, and (12) inadequate medical care.

### 1. Access to Reading Materials

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Among other things, the "Constitution protects the rights to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).

Prison policies impinging on inmates' First Amendment rights are valid only if they are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). To decide whether a particular policy advances such an interest, the court must consider (1) whether there is a rational connection between the regulation and a neutral and legitimate governmental interest; (2) whether alternative means exist for the inmates to exercise their constitutional rights; (3) the impact of accommodating that right on other inmates and prison personnel; and (4) whether reasonable alternatives to the regulation exist. *Kaden v. Slykhuis*, 651 F.3d 966, 968 (8th Cir. 2011) (citing *Turner*, 482 U.S. at 89-90).

Nelson alleges there is a "total ban against all reading material not provided by the jail," which includes "newspapers, magazines, books, religious publications, legal reviews, the Nebraska Jail Standards, ACLU publications, [and] Holy books other than the Protestant Bible" (Filing No. 1 at CM/ECF p. 6, ¶ 2). In an inmate request form dated December 18, 2017, which is attached to the Complaint, Nelson stated: "I was having my subscriptions (Omaha World Herald [newspaper] and several magazines) forwarded to me but I was told that all reading material (except religious) has been banned from any source." Nelson inquired whether this was true and indicated she could "find nothing in the rule book about it." The response she received next day was simply: "Read rules on message board." (Filing No. 1 at CM/ECF p. 19). Nelson then notes as part of her pleading:

> "Religious" also banned. Anything mailed in will be placed in property without notice. The rules on the "message board" say nothing about it. A followup grievance about it was not answered.

(Filing No. 1 at CM/ECF p. 19).

Liberally construing Nelson's Complaint, the court concludes she has stated a plausible First Amendment claim for challenging Madison County's policy of banning outside reading material, but only insofar as Nelson alleges she was denied access to newspaper and magazine subscriptions. *See Cooper v. Schriro*, 189 F.3d 781, 784 (8th

Cir. 1999) (reversing § 1915A dismissal of inmate's First Amendment claim that he was denied access to printed materials, including "all magazines" and legal and religious materials; given allegation that prisoner was denied publications, prison was obligated to proffer legitimate reason for decision to deny these materials); *Sterling/Sayyed v. Banks*, 72 F. App'x 504, 506 (8th Cir. 2003) (reversing § 1915A dismissal of inmate's First Amendment claim where attachment to complaint supplied necessary facts).

   Absolute bans on inmate access to newspapers and magazines, as a general rule, violate the First Amendment because they are an "exaggerated response" to legitimate penological needs. *See Mann v. Smith*, 796 F.2d 79, 82 (5th Cir. 1986) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979)); *see also Koger v. Dart*, 114 F.Supp.3d 572, 583 (N.D. Ill. 2015) (when an easy alternative existed, a total ban on newspapers was an exaggerated response to the jail's concerns); *United States ex rel. Manicone v. Corso*, 365 F.Supp. 576, 577 (E.D.N.Y. 1973) ("There is no basis for total restrictions on prisoners' access to the news in view of their clear First Amendment rights.") Furthermore, a number of courts have held that prisoners have a right to receive and read newspapers. *See e.g, Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987) (absent restrictions based on legitimate goals of confinement, prison inmates retain First Amendment right to receive and read newspapers); *Mann*, 796 F.2d 79, 82-83 (county jail's policy of banning newspapers and magazines violated a pretrial detainee's First Amendment rights where the state failed to show the ban served a legitimate government objective); *Wilkinson v. Skinner*, 462 F.2d 670, 673 n. 5 (2nd Cir. 1972) ("refusal to deliver a newspaper would ordinarily be interference with appellant's first amendment rights"); *Rowland v. Jones*, 452 F.2d 1005 (8th Cir. 1971) (prison authorities' denial of access to newspaper "Muhammad Speaks" constituted prior restraint in violation of First Amendment); *Spellman v. Hopper*, 95 F. Supp.2d 1267 (M.D. Ala. 1999) (absolute prohibition on subscription magazines and newspapers applied to administrative segregation inmates in Alabama is not reasonably related to legitimate penological goals).

*Morphis v. Smith*, No. 2:14-CV-02027-MEF, 2017 WL 1128463, at \*12-13 (W.D. Ark. Mar. 24, 2017).

While Nelson complains about a "complete ban" on outside reading materials (Filing No. 1 at CM/ECF p. 6, ¶ 2), she has not set forth sufficient facts to show that she has not been allowed access to anything other than her newspaper and magazine subscriptions. Nelson also alleges that "[p]eriodicals received in the mail are confiscated without notice to the inmate" (Filing No. 1 at CM/ECF p. 13, ¶ 20). This may constitute a due process violation. *See Bonner v. Outlaw*, 552 F.3d 673, 676-77 (8th Cir. 2009) ("It is the inmate's interest in 'uncensored communication' that is the liberty interest protected by the due process clause, regardless of whether that communication occurs in the form of a letter, package, newspaper, magazine, etc. Thus, whenever prison officials restrict that right by rejecting the communication, they must provide minimum procedural safeguards, which include notice to an inmate that the correspondence was rejected."). However, because Nelson does not claim to have had any reading materials confiscated without notice, no deprivation of her due process rights is alleged.

### 2. Religious Freedom

Nelson claims that "[t]he ban against reading material includes religious and spiritual books and publications" and "[o]nly the Protestant Bible is allowed. No Jewish or Muslim material is allowed." She also alleges that "[r]eligious activities are segregated based on 'Protestant' Bible study and "Catholic services." If an inmate wants to go to the Bible study, he or she is automatically banned from Catholic services and vice versa. If he or she want to go to Bible study, they must agree not to go to Catholic services." (Filing No. 1 at CM/ECF p. 6, ¶ 3).

Nelson does not identify her religious preference or allege any facts to show that the jail's policies have infringed upon her religious freedoms. She therefore does not have standing to litigate this claim. *See McGowan v. State of Md.*, 366 U.S. 420,

429 (1961) (department store employees convicted of violating Sunday "blue laws" lacked standing to bring First Amendment claim under the general rule that "a litigant may only assert his own constitutional rights or immunities.") (quoting *United States v. Raines*, 362 U.S. 17, 22 (1960)); *Am. Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011) (stating that plaintiffs must allege infringement of their own religious freedoms in order to have standing to bring a free exercise claim).

### 3. Correspondence

Nelson alleges that "[i]tems are often removed from inmate mail (such as drawings) without any sort of notice" so "[t]he inmate has no way of knowing it happened unless the person who wrote the letter happens to say they are enclosing something" (Filing No. 1 at CM/ECF p. 13, ¶ 19). In addition, she claims that "[m]ail from religious volunteers to inmates in the form of post cards with Bible verses are discarded upon receipt, with the inmates ever knowing they were received" (Filing No. 1 at CM/ECF p. 13, ¶ 18).

The Supreme Court has held that "[t]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds by Abbott*, 490 U.S. at 405. As such, "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Id.* at 417 (approving requirement that an inmate be notified of the rejection and have a reasonable opportunity to protest the decision).

Again, however, Nelson does not allege that items have been removed from her mail without notice. Similarly, Nelson claims that "[c]orrespondence from legal sources is open[ed] and reviewed" (Filing No. 1 at CM/ECF p. 10, ¶ 9), but does

allege that her legal mail has ever been opened outside her presence.[2] Absent such allegations, no actionable claim for relief is stated.

### 4. Telephone Usage

Nelson alleges: "Phone use is cost prohibitive, at a minimum cost of $20 and limited to purchase on 2 days of the week.... A local phone call requires a twenty dollar "phone card," which is then billed at fifty cents per minute for local calls." (Filing No. 1 at CM/ECF p. 10, ¶ 10). She claims that "[a]n inmate on pretrial status is often incarcerated simply because the jail makes it impossible to contact friends or family to even let them know they are in jail" (Filing. No 1 at CM/ECF p. 10, ¶ 10), and also that "[a]n inmate who cannot afford the twenty dollar minimum to place a phone call dares not ever complain about jail conditions because to do so would be to risk all contact with family" (Filing No. 1 at CM/ECF p. 11, ¶ 14).

Nelson does not allege that her own ability to place a telephone call is impacted by the "phone card" policy or the usage charges. In any event, "[f]ederal courts ... have consistently rejected First Amendment claims challenging high telephone rates on grounds that prisoners are not entitled to a specific rate for telephone calls and that prisoners failed to allege that the rates were so exorbitant as to deprive them of telephone access altogether." *Hooks v. State of Kentucky*, No. 3:16-CV-00187-CRS, 2016 WL 4180003, at *3-4 (W.D. Ky. Aug. 5, 2016) (citing cases); *see Kanatzar v. Cole*, No. 17-3115-SAC, 2017 WL 5970836, at *9 (D. Kan. Dec. 1, 2017) (citing

---

[2] The Eighth Circuit has interpreted *Wolff v. McDonnell*, 418 U.S. 539 (1974) to mean that "[p]rivileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir.1997). However, "[t]o assert a successful claim for denial of meaningful access to the courts ... an inmate must demonstrate that he suffered prejudice." *Id.* at 431 (quoting *Berdella v. Delo*, 972 F.2d 204, 210 (8th Cir. 1992)).

additional cases); *Morrow v. Cty. of Nassau*, No. 15-CV-4793 SJF AKT, 2015 WL 6691672, at *5 (E.D.N.Y. Nov. 3, 2015) (prisoner's claim that charges for using telephones was "too expensive" failed to state claim for constitutional deprivation); *Holloway v. Magness*, 666 F.3d 1076, 1080 (8th Cir. 2012) (holding that a jail has no First Amendment obligation to provide telephone service "at a particular cost to users"). Nelson's allegations regarding the expense of making telephone calls are not sufficient to state a claim upon which relief may be granted.

### 5. *Access to the Courts*

It is well established "that prisoners have a constitutional right of access to the courts" which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 821 & 828 (1977). However, to recover for the deprivation of this constitutional right, "the inmate ... must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In other words, to prevail on an access-to-the-courts claim, a prisoner must establish that she sustained an "actual injury" by demonstrating "that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353.

"Actual injury" is not satisfied by demonstrating "just any type of frustrated legal claim." Rather, inmates must only be provided the tools required to pursue direct appeals from convictions for which they are imprisoned, habeas petitions, and actions under 42 U.S.C. § 1983 to vindicate their basic constitutional rights. *Id.* at 354-55 (prisons may not impede an inmate's ability to "attack their sentences, directly or collaterally, and ... challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").

To state an access-to-the-courts claim, "a prisoner must establish [that] the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Holt v. Howard*, 806 F.3d 1129, 1133 (8th Cir. 2015) (quoting *Williams v. Hobbs*, 658 F.3d 842, 851-52 (8th Cir. 2011)). "[T]he underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002). The "lost" claim occasioned by the denial of an inmate's access to the courts must "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.*

Here, Nelson merely alleges that the Madison County Jail's law library has not been kept current and is incomplete (Filing No. 1 at CM/ECF p. 10, ¶ 9). She does not alleged any facts to establish an actual injury. Her access-to-the-courts claim therefore will be dismissed.

### 6. Grievance Procedure

Nelson alleges that "jail policy is to simply ignore (probably throw away) grievances" and that there has never been a response to her grievances (Filing No. 1 at CM/ECF pp. 6-7, ¶ 4). While the lack of a meaningful grievance procedure might excuse the need to exhaust administrative remedies, *see Ross v. Blake*, 136 S.Ct. 1850, 1855 (2016) ("A prisoner need not exhaust remedies if they are not 'available.'"), it does not provide a cause of action under § 1983. *See Merryfield v. Jordan*, 431 Fed. App'x 743, 749 (10th Cir. 2011) (holding that civilly committed sex offender lacked any federal constitutional right to an adequate grievance procedure); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (holding that allegations regarding actions of prison officials in handling prisoner's grievances and regulating access to his attorney were insufficient to state a constitutional claim); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no "liberty interest" in the

-16-

processing of their grievances, such as would support § 1983 claim for prison official's failure to pick up his completed grievance forms).

### 7. Retaliation

Nelson alleges that "writing a grievance or complaining about jail conditions such as hunger and cold" or "the twenty dollar minium to place a phone call" will result in an inmate being placed in administrative segregation and losing visiting privileges, and that "[u]sing the court to address the conditions of the jail [also] meets with retaliation (Filing No. 1 at CM/ECF pp. 7, 10, 12, ¶¶ 5, 9, 14). She claims that jail staff "have convinced inmates that to try to do anything will result in unacceptable retaliation" (Filing No. 1 at CM/ECF p. 12, ¶ 15).

Retaliation such as this is actionable as a First Amendment violation. *See Hartsfield v. Dep't of Corr.*, 107 F. App'x 695, 696 (8th Cir. 2004) (finding district court erred in dismissing claim that defendant wrote a retaliatory misconduct report after plaintiff announced his intention to file a grievance against defendant); *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir. 1989) (filing of false disciplinary charge against inmate is actionable under § 1983 if done in retaliation for inmate's having filed grievance). Here, however, Nelson does not allege that she personally has been threatened with retaliation or retaliated against. Absent such an allegation, supported by essential facts, no claim is stated upon which relief may be granted.

### 8. Administrative Segregation

Pursuant to the due process provisions of the Fourteenth Amendment, a pretrial detainee may not be punished prior to a determination of guilt in accordance with due process. *Bell*, 441 U.S. at 535; *see Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (requiring pretrial detainee to be placed in administrative segregation is punishment; claim that pretrial detainee was denied due process when placed in administrative detention for refusing to work did not lack arguable basis in law and

should not have been dismissed prior to service). But "not every disability imposed during ... detention amounts to 'punishment' in the constitutional sense.'" *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). "[I]f a particular condition or restriction of ... detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.*

Nelson generally alleges that "[a]n inmate is confined in 'administrative segregation' at the whim of staff, with no hearing or right of appeal (Filing No. 1 at CM/ECF p. 5, ¶ 5), but does not claim that she has ever been placed in administrative segregation or otherwise disciplined without benefit of due process. Nelson further alleges that laughing is considered an infraction (Filing No. 1 at CM/ECF p. 11, ¶ 11), but she does not claim to have been disciplined for this reason. "In order to prevail on a Fourteenth Amendment due process claim, the plaintiff must allege that [s]he was deprived of life, liberty or property by government action." *Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998).

### 9. Conditions of Confinement

The Eighth Amendment's prohibition against "cruel and unusual punishments" requires that prison officials provide humane conditions of confinement. "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). Pretrial detainees are entitled to at least as great protection under the Fourteenth Amendment as that afforded convicted prisoners under the Eighth Amendment." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010).

A prisoner asserting a conditions of confinement claim must identify the "deprivation of a single, identifiable human need such as food, warmth, or exercise," and "the risk that the prisoner complains of [must] be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."

*Helling v. McKinney*, 509 U.S. 25, 36 (1993); *Wilson v. Sieter*, 501 U.S. 294, 304 (1991). A conditions of confinement claim based on prison conditions requires a showing of: (1) a deprivation of "minimal civilized measure of life's necessities," and (2) deliberate indifference by prison officials to those basic needs. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson*, 501 U.S. at 304.

Nelson alleges that when it is cold in the jail inmates must stay in bed in order to stay warm; they are not allowed to cover their arms or to wrap a blanket around their shoulders. She also alleges that inmates are fed stale bread, soggy food, and half portions which leads to constant hunger. (Filing No. 1 at CM/ECF pp. 7-9, ¶ 6). In addition, Nelson alleges there is mold on shower curtains and complains that female prisoners must wear unclean smocks with no t-shirts underneath; she also complains about a lack of personal hygiene products. (Filing No. 1 at CM/ECF pp. 12-13, ¶ 16).

Nelson's allegations concerning the food served at the Madison County Jail, which the court construes as involving an official policy of deliberate indifference to inmates' basic needs, are sufficient to state a claim for relief on initial review. *See, e.g., Obama v. Burl*, 477 F. App'x 409, 412 (8th Cir. 2012) (allegations by prisoner that he was constantly hungry from small portions of food, which included some form of beans for every meal except breakfast, no sweets, and watered-down Kool-Aid, were sufficient to survive preservice dismissal); *Day v. Norris*, 219 F. App'x 608, 610 (8th Cir. 2007) (reversing dismissal of prisoner complaint on initial review and finding allegations that plaintiff was served a diet that did not provide him adequate nutrition were sufficient at this stage of the litigation); *Divers v. Dep't of Corr.*, 921 F.2d 191, 193-94 (8th Cir. 1990) (per curiam) (finding not frivolous inmate's allegation that his food was insufficient in amount, cold, unappetizing, prepared from restricted menu, and delivered in unsanitary manner).

As to the other conditions of confinement about which Nelson complains, however, not enough facts are alleged to state a plausible claim for relief. She does not allege, for example, at what temperature the jail is usually kept or how often inmates

are uncomfortably cold. Likewise, it is not clear that the mold in the showers or clothing issues are continuing problems or health hazards. While "a long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights," *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996), Nelson's complaints only concern the quality of the deodorant and shampoo that is made available to inmates and an alleged delay of up to 24 hours to obtain soap.

### 10. Verbal Abuse

Nelson alleges that jail staff are "allowed to swear at and taunt inmates with impunity." (Filing No. 1 at CM/ECF p. 9, ¶ 7). This does not state a claim upon which relief may be granted under § 1983. *See Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) ("Verbal abuse is normally not a constitutional violation."); *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) ("The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.") (quotation marks and citation omitted); *Kalmio v. Mettler*, No. 4:13-CV-083, 2013 WL 4478691, at *2 (D.N.D. Aug. 20, 2013) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.") (quotation marks and citations omitted).

### 11. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike, a protection that applies to prison inmates. *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004). In order to establish an equal protection claim, a prisoner must show that he or she was treated differently from similarly-situated inmates and that the different treatment was based upon either a suspect classification or a fundamental right. *Weems v. Little Rock*

*Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006); *Weiler v. Purkett*, 137 F.3d 1047, 1052 (8th Cir.1998).

Nelson claims that "[e]qual protection is denied to females [detained at the Madison County Jail] in that women are absolutely barred due solely to their gender from the inmate worker program" (Filing No. 1 at CM/ECF p. 10, ¶ 8). She alleges:

> While the rules state "anyone" may apply, the reality is that females may not participate. No female has ever worked as an inmate worker at the Madison County Jail. It is absolutely banned. Other excuses are used but the truth is that it is due solely to their gender.

(Filing No. 1 at CM/ECF p. 10, ¶ 8). Nelson does not allege that she applied for and was denied admission to the inmate worker program, or that she would qualify for the program but for her gender.

"A plaintiff has the burden of establishing subject matter jurisdiction, for which standing is a prerequisite." *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006). "To establish standing, a plaintiff is required to show that he or she had 'suffered an injury in fact, meaning that the injury is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 591 (8th Cir. 2003)). Because Nelson's Complaint asserts only a facial challenge to the alleged governmental policy or custom, it fails to allege the requisite standing. *See Mosby v. Ligon*, 418 F.3d 927, 933-34 (8th Cir. 2005) (discussing constitutional standing).

In addition, Nelson does not allege that male inmates at the Madison County Jail are similarly situated to female inmates. "Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996) (quoting *Klinger v. Dep't of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994)).

Nelson also claims "brown" inmates are reported to immigration authorities even though they are U.S. citizens (Filing No. 1 at CM/ECF p. 13, ¶ 17). However, Nelson does not allege that she is a member of this protected class.

### 12. Inadequate Medical Treatment

"A deliberate indifference to a serious medical need claim presents one subset of possible conditions of confinement claims, and specifically asserts that a plaintiff was deliberately deprived of his basic need for medical care." *Christian v. Wagner*, 611 F. Supp. 2d 958, 962 (S.D. Iowa 2009), *aff'd*, 623 F.3d 608 (8th Cir. 2010); *Aswegan v. Henry*, 49 F.3d 461, 463-64 (8th Cir.1995) ("A claim asserting deliberate indifference to a prisoner's serious medical need is thus best characterized as falling within a specific subcategory of conditions of confinement claims, not as a separate and distinct legal theory."). The same analytical model applies equally to conditions of confinement cases and to deprivation of medical care cases. *Beyerbach v. Sears*, 49 F.3d 1324, 1326 n. 1 (8th Cir. 1995), *abrogation on other grounds recognized by Reece v. Groose*, 60 F.3d 487, 492 (8th Cir. 1995).

To prevail on a deliberate indifference to a serious medical need claim, a prisoner detainee must show: (1) she suffered from an objectively serious medical need, and (2) the defendant knew of the need yet deliberately disregarded it. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

Nelson claims it is "standard operating procedure" for medical orders from doctors to be "vetoed" by jail staff, and, in particular, alleges:

Nelson was denied a brace and a sling for a wrist and shoulder injury so the doctor asked if I could just tie a towel around my arm to act as a sling if a sling itself is not allowed but was told that a towel isn't supposed to be used as anything but a towel.

(Filing No. 1 at CM/ECF p. 11, ¶ 12).

As a pretrial detainee, Nelson's claim of inadequate medical care arises under the Fourteenth Amendment, but is nonetheless analyzed under the Eighth Amendment standard. *See Butcher v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To establish "custom" liability of a local government entity under § 1983 for failure to provide medical care, the plaintiff must demonstrate (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees, (2) deliberate indifference to, or tacit authorization of, such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct, and (3) the custom was a moving force behind the constitutional violation. *Smith v. City of St. Ann*, 576 F. App'x 621 (8th Cir. 2014) (citing *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825 (8th Cir. 2013)). Similarly, a policy that results in inadequate treatment is not unconstitutional unless it evinces deliberate indifference to serious medical needs. *See Jenkins v. Cty. of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009). "Although [Nelson] need not set forth with specificity the existence of an unconstitutional policy or custom at the pleading stage, [s]he must nonetheless present some allegations, references, events, or facts from by which the court could begin to draw an inference that the conduct complained of, namely deliberate indifference to serious medical needs, resulted from an unconstitutional policy or custom of the County or a deliberate choice by a decision-maker with final authority." *Cotton v. Douglas Cty. Dep't of Corr.*, No. 8:16CV153, 2016 WL 5816993, at *6 (D. Neb. Oct. 5, 2016).

Even if it may be assumed that a doctor prescribed using a sling or other device to immobilize Nelson's arm, her allegation that it is "standard operating procedure" for staff to "veto" doctor's orders is not sufficient to show the existence of a policy

or custom of deliberate indifference to serious medical needs. There is no allegation that a policymaking official for the County either told jail staff that they could ignore doctors' orders or else knew of and tacitly approved of this alleged practice. There is also no allegation that any specific Defendant was responsible for the denial of the brace and sling or use of the towel.

Nelson further claims that "[n]o mental health issues are addressed at all" (Filing No. 1 at CM/ECF p. 11, ¶ 12), but does not allege that she has ever sought or been denied treatment for mental health issues. As already discussed, Nelson cannot assert constitutional claims on behalf of the general jail population.

### F. Motion to Amend Complaint

On March 30, 21018, Nelson filed a Motion to Amend Complaint (Filing No. 9) to add three Defendants and to include some additional facts. The proposed additional Defendants are: (1) Captain Bula, who allegedly "blocks almost every grievance filed by any inmate ... [and destroys] the paperwork filed by inmates" (Filing No. 9 at CM/ECF p. 1); (2) Sgt. Gene Blank, who allegedly "has been miscalculating inmate sentences" (Filing No. 9 at CM/ECF p. 2); and (3) Sgt Bill Kucera, who allegedly "attempted to block Plaintiff's access to court after Sgt Blank's calculation errors came to light" (Filing No. 9 at CM/ECF pp. 2-3). Nelson further alleges that "inmates are not allowed to know who is supposedly discontinuing their medication" and that this anonymous doctor "never sees the inmates but merely discontinues medication based on 'jail policy,' not medical factors" (Filing No. 9 at CM/ECF p. 3). Nelson claims her shoulder injury was not properly treated. Finally, Nelson alleges that "any inmate who requests to be placed on 'protected custody' automatically loses all visiting rights" and must wear handcuffs to visit the law library (Filing No. 9 at CM/ECF p. 4).

These additional allegations do not correct the pleading deficiencies that have been discussed above, nor on their own do they state a claim upon which relief may

be granted. The allegations concerning Capt. Bula's blocking of grievances do not pertain directly to Plaintiff. The same is true of Nelson's allegations regarding the discontinuation of medication and protected custody conditions. Plaintiff does claim that Sgt. Blank miscalculated her sentence, but she alleges only a lack of "due diligence," which is not sufficient to state a claim under § 1983. "Negligent, or even grossly negligent, conduct by government officials cannot be the basis of a constitutional tort claim." *Davis v. Fulton Cty.*, 90 F.3d 1346, 1352 (8th Cir. 1996). Nelson claims Sgt. Kucera attempted to block her access to court, but does not allege any actual injury. *See Lewis v. Casey, supra*. Finally, Plaintiff alleges she will incur medical expenses following her release from jail because of her shoulder injury, but this does not further her "deliberate indifference" claim because she has not alleged sufficient facts to establish liability. The Motion to Amend Complaint therefore will be denied without prejudice.

### G. Motion to Appoint Counsel

The court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel." Trial courts have "broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *Id*. Having considered these factors, Plaintiff's Motion for Appointment of Counsel will be denied.

### IV. CONCLUSION

To summarize, Nelson has stated plausible claims for obtaining relief against Madison County with respect to the withholding of her newspaper and magazine subscriptions and with respect to the quality and quantity of food she is provided. The

court cautions Nelson that this is only a preliminary determination based on the allegations of the Complaint and is not a determination of the merits of her claims or potential defenses thereto. In all other respects, Nelson's Complaint fails to state a claim upon which relief can be granted against Madison County. No plausible claim for relief is alleged against Sheriff Hjorth in his individual capacity. Nelson cannot sue on behalf of other inmates or bring a class action. Her motions for leave to amend and for appointment of counsel will be denied.

Accordingly,

IT IS ORDERED:

1.     The clerk of the court will modify the docket sheet to:

      a.     List Linda Nelson as the sole Plaintiff, by striking the words "all other similar situation" after her name; and

      b.     Add "The county of Madison, Nebraska," as Defendant.

2.     All claims alleged against Vern Hjorth, Madison County Sheriff, in his individual and official capacities, are dismissed without prejudice and he shall no longer be a party Defendant.

3.     Plaintiff's motion to amend complaint (Filing No. 9) is denied without prejudice.

4.     Plaintiff's motion for additional time to pay the initial partial filing fee (Filing No. 10) is denied without prejudice, as moot.

5.     Plaintiff's motion for appointment of counsel (Filing No. 11) is denied without prejudice.

6.     The only claims alleged in Plaintiff's Complaint that will be allowed are: (1) A First Amendment claim against Madison County for an alleged official policy which has prevented Plaintiff from receiving newspaper and magazine subscriptions (see Filing No. 1 at CM/ECF p. 6, ¶ 2 & p. 18) and (2) a Fourteenth Amendment claim against Madison County for an alleged official policy of feeding her "stale bread, soggy food, and ½ portions to result in constant hunger (see Filing No. 1 at CM/ECF p. 8, ¶ 6). Any and all other claims alleged in the Complaint are dismissed without prejudice.

7.     For service of process on Defendant, "The county of Madison, Nebraska," the clerk of the court is directed to complete a summons form and a USM-285 form for said Defendant using the address "Madison County Clerk, 1313 N. Main Street, Madison, NE 68748," and forward them together with a copy of the Complaint (Filing No. 1) and a copy of this Memorandum and Order to the Marshals Service. The Marshals Service shall serve Defendant.[3] Service may be accomplished by using any of the following methods:  personal, residence, certified mail, or

---

[3] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "**[t]he officers of the court shall issue and serve all process, and perform all duties in such cases**." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

designated delivery service. *See* [Federal Rule of Civil Procedure 4(e)](#); [Neb. Rev. Stat. § 25-508.01 (Reissue 2016)](#).

8.    [Federal Rule of Civil Procedure 4(m)](#) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

9.    The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

10.    The clerk of the court is directed to set the following pro se case management deadline: July 30, 2018—Check for completion of service of process.

DATED this 2nd day of May, 2018.

BY THE COURT:

s/ *Richard G.Kopf*
Senior United States District Judge